**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EAST TEXAS SEISMIC DATA,
LLC., an Oklahoma Company;
CAMPAC EIGHTY-TWO LIMITED
PARTNERSHIP, an Oklahoma limited
partnership,

        Plaintiffs - Appellants,

    v.

SEITEL DATA, INC., a corporation;
FIRST SEISMIC CORPORATION, a
corporation,

        Defendants,

and

SANTA FE ENERGY RESOURCES,
INC., a corporation; ICM GLOBAL,
INC., a corporation.

        Defendants - Appellees.

No. 98-5181

(N.D. Oklahoma)

(D.C. No. CV-97-981-BU)

---

**ORDER AND JUDGMENT**  *

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BALDOCK** , **REAVLEY** [**], and **BRORBY** , Circuit Judges.

East Texas Seismic Data, LLC ("East Texas") and Capmac Eighty-Two Limited Partnership ("Capmac") appeal the summary judgment granted to IMC Global, Inc. ("IMC") and Santa Fe Energy Resources, Inc. ("Santa Fe"). Because the contract is unambiguous and explicitly grants each venturer the right to sell its interest in seismic data after two years, we affirm.

Capmac is the successor to McKenzie Management, Inc. ("McKenzie"). Santa Fe is the successor to Adobe Resources, Inc. ("Adobe"). IMC is the successor to FMP Operating Company ("FMP"). McKenzie, Adobe and FMP were members of a joint venture which obtained the seismic data at issue. East Texas purchased one-half of McKenzie's interest in the seismic data prior to McKenzie's succession by Capmac. More than 2 years after the termination of the venture, and prior to succession by Santa Fe and IMP, Adobe and FMP transferred their interest in the seismic data to First Seismic Corporation ("First Seismic").

The ownership and disposition of the seismic data is the subject of contractual terms contained in the joint venture agreement between McKenzie, Adobe and FMP. The relevant portion of section 5.1 of the agreement provides:

---

[**]Honorable Thomas M. Reavley, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

All [seismic data] acquired in the Venture Program (the "Data") will be kept in the custody of Adobe or Consultant but shall be owned by the Venturers. ... The right to sell all or trade any part of the Data shall be vested exclusively in the Venturers in proportion to their Participation Interest in the Prospect or Prospects to which the Data relates or, if not relatable to specific Prospects, shall be allocated to the Venturers in accordance with their Participation Interest in the Venture Program. However, during the term of such Venture Program and for two (2) years thereafter no such sale or trade shall be made without unanimous approval by the Venturers. ... The Venturers hereby agree to execute a separate agreement within one hundred twenty (120) days from the execution of this Agreement for the disposition of seismic data acquired or to be acquired hereunder.

The separate agreement referred to in section 5.1 was never completed.

Appellants seek damages for conversion and an accounting of proceeds from the sale to First Seismic, claiming that the data was partnership property subject to fiduciary duties. In addition, appellants contend that the agreement must be construed according to industry standards which would impose additional obligations on appellees with regard to the data.

The agreement states that the seismic data will be owned by the venturers and that the right to sell all or trade any part of the seismic data will be exclusively vested in the venturers. Only an unreasonable construction of the language of the agreement would render the data partnership property. The agreement vests exclusive rights to sell the data in the venturers, indicating that the agreement confers this right on the venturers individually rather than on the partnership. The terms "right to sell all or trade any part" indicates that the

ownership rights of each partner attach to the data itself, rather than to an interest in the partnership. The two year limitation on the unanimity requirement clearly implies that once the two year period is over, the right of sale is unrestricted. This agreement is unambiguous and grants each venturer the unrestricted right to sell its proportionate interest in the data.

Appellants argue that the agreement must be construed according to extrinsic evidence of industry custom, citing to Oxley v. General Atlantic Resources, Inc., 936 P.2d 943 (Okla. 1997) and Heiman v. ARCO, 891 P.2d 1252 (Okla. 1995). In those cases the court held that the agreement was silent or ambiguous with regard to the dispute and applied industry custom to construe the agreement. Appellants argue that the failure to complete the additional agreement referred to in section 5.1 renders the joint venture agreement ambiguous, requiring the court to construe the agreement according to industry custom. The joint venture agreement is neither silent nor ambiguous. In the absence of an additional agreement concerning the disposition of the data, the agreement explicitly grants each venturer the right to sell its interest in the data. There is no basis for considering extrinsic evidence of industry custom to construe an explicit and unambiguous agreement. Jackson Materials, Co. v. Grand River Dam Authority, 170 P.2d 552, 557 (Okla. 1945)

Appellants also cite to RESTATEMENT (SECOND) OF CONTRACTS §221 (1979) as authority that the agreement should incorporate industry standards. Even if the agreement were ambiguous, the order of preference for construction of contracts places industry custom last after course of performance and course of dealing. RESTATEMENT (SECOND) OF CONTRACTS §203 (1979). If extrinsic evidence were admissible to construe this agreement, the appellant's unilateral interpretation would be given greater weight than industry standard. Appellants have also sold a proportionate interest in the data, indicating that, contrary to their contention regarding industry custom, appellants interpret this contract to grant a right of sale.

Appellants contend that section 7.2 of the agreement restricts the right of sale granted in section 5.1. Section 7.2 reads:

> Anything to the contrary herein notwithstanding, those provisions of this Agreement which govern rights and obligations accruing hereunder prior to termination, or govern the rights and obligations between and among the parties beyond the term of the Venture Program or as to properties in the Area of Interest, shall continue to be effective and survive the termination of this Agreement, or the withdrawal of any Venturer therefrom.

Appellants argue that this provision modifies the rights of the venturers to sell their interest in the data. The intended effect of this provision is not patently obvious because it is drafted in vague and general terms. Because the terms of section 5.1 are specific and exact, such terms should be given greater weight than

the general language found in section 7.2.      RESTATEMENT (SECOND) OF CONTRACTS §203 (1979).  Furthermore, appellants raised this issue for the first time in this appeal and did not address the effect of section 7.2 in the district court.

AFFIRMED.


ENTERED FOR THE COURT

Thomas M. Reavley
Senior Circuit Judge